1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VINCENT C. BRUCE,                    )        No. C 99-4492 RMW (PR)
                                     )
            Plaintiff,               )        ORDER DENYING IN PART
                                     )        MOTION TO ENFORCE
     v.                              )        SETTLEMENT AGREEMENT;
                                     )        REFERRING CASE TO PRO
EDDIE YLST, et al.,                  )        SE PRISONER SETTLEMENT
                                     )        PROGRAM
            Defendants.              )
_____)

Plaintiff, a state prisoner proceeding pro se, filed a federal civil rights complaint pursuant to 42 U.S.C. § 1983, challenging prison gang validation procedures. On September 13, 2001, the court granted defendants' motion for summary judgment and terminated the case. On appeal, on February 3, 2004, the Ninth Circuit affirmed in part, reversed in part, and remanded in part. See Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003). Upon remand, the parties reached a settlement agreement, and entered into a stipulated dismissal. On March 15, 2013, plaintiff filed, inter alia, a motion to enforce the settlement agreement. The case was thereafter re-assigned to the undersigned judge.

The court re-opened the case, and ordered defendants to file a response to plaintiff's motion. Defendants filed their response, and plaintiff filed a reply. The court denied the motion

1   to enforce without prejudice in order to determine first whether the settlement agreement had

2   been breached.  The court then ordered defendants to show cause why plaintiff was not entitled

3   to relief.

4           Defendants have filed their response, and plaintiff has filed his reply.[1]  The court has

5   reviewed the pleadings and records in this case.  For the reasons stated below, the court will

6   DENY plaintiff's motion in part, and refer this matter to Judge Vadas for settlement proceedings.

7                                          **BACKGROUND**

8           In October 1999, plaintiff initiated this civil rights case by filing a federal complaint.  In

9   January 2002, plaintiff was released from the Secured Housing Unit after being designated as an

10  inactive member of the Black Guerilla Family prison gang in July 2001 when it was determined

11  that he had not been involved in any gang activity for over six years.  (Pl. Reply at 6; Pl. 1st

12  Decl. ¶ 44.)  Plaintiff and defendants reached a settlement agreement in this underlying case in

13  2006.  As part of the settlement agreement, plaintiff was awarded $7500.00, and the parties

14  agreed that a copy of the settlement agreement and the following language would be placed in

15  plaintiff's prison file:

16          If Vincent Bruce is considered for revalidation as an associate or member of the Black
            Guerilla Family prison gang, the CDCR will thoroughly review the source item or
17          sources items [sic] considered in and used to support any such revalidation to ensure
            that the proposed revalidation complies with CDCR criteria for revalidation that are in
18          effect at the time of the proposed revalidation and the due process protections in effect
            at the time of the proposed revalidation.  Such protections will include those set forth in
19          <u>Castillo v. Terhune</u>, USDC N.D. Case No. C-94-2847, provided that the <u>Castillo</u> terms
            are in effect at the time of the proposed revalidation.

20  (Docket No. 230, Ex. A at ¶ 6.)

21          In 2007, plaintiff was revalidated as an associate of the Black Guerilla Family prison

22  gang.  Plaintiff challenged this revalidation by filing a federal civil rights action in <u>Bruce v. Cate</u>,

23  No. 09-4649 JW (N.D. Cal.).  In his complaint, plaintiff alleged that defendants (1) denied him

24  due process by revalidating him as an associate based on false evidence and without procedural

25  protections; (2) retaliated against him by revalidating him as an associate of a prison gang; and

26

27          _____

            [1]  Plaintiff's request for judicial notice is GRANTED.

28
    Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
    Program
    G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

1   (3) violated his constitutional right to receive mail.  (Defs. Req. Judicial Notice, Ex. A.)  On

2   March 26, 2012, the defendants' motion for summary judgment was granted, and the civil rights

3   action was closed.  (Id.)  In the order, the court found that, inter alia: (1) the 2007 revalidation

4   process complied with due process in that the validation was supported by "some evidence," and

5   procedural protections set forth in Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th Cir. 1986),

6   were followed, and (2) following an in camera review, the source items used to re-validate

7   plaintiff were reliable, under California Code of Regulations, title 15 section 3321.

8       The California Department of Corrections and Rehabilitation ("CDCR") has established a

9   process for identifying gang affiliates.  The Institutional Gang Investigator ("IGI") must first

10  investigate gang involvement allegations.  Cal. Code Regs., tit. 15, § 3378(c)(1), (c)(2).[2]  The

11  investigation ("active/inactive review process") is done to determine whether a validated gang

12  affiliate is still active within the gang, meaning, whether there is any evidence of gang activity or

13  association within the last six years.  Cal. Code Regs., tit. 15, § 3341(c)(5).  Revalidation after

14  being categorized as inactive is appropriate if there is at least one reliable source item to support

15  the finding that an inmate is still active within the gang over the last six years, and thus, either a

16  member or associate of his gang.  Cal. Code Regs., tit. 15 § 3378(f).

17      In order to validate a gang affiliate, a validation package must be sent to the Office of

18  Correctional Safety ("OCS").  Cal. Code Regs., tit. 15, § 3378(c)(6).  After the investigation, the

19  IGI shall complete a general chrono, Form 128B, specifying the inmate's gang affiliation,

20  category of involvement, and which independent source item supports his conclusion.  CDCR

21  Departmental Operations Manual ("DOM") § 52070.18.2.[3]  Form 128B is part of the validation

22  package that gets submitted to OCS.  DOM § 52070.21.1.  Form 812A shall also be completed

23  after a thorough investigation and after an inmate has been designated as a member, associate, or

24

25      [2] All references to the California Code of Regulations refer to the regulations in effect in
26  2007, the year plaintiff was revalidated.

27      [3] All references to the DOM refer to the regulations in effect in 2007, the year plaintiff
28  was revalidated.

1  drop out.  DOM §§ 52070.18.1, 61020.6.  Both Forms 812A and 128B shall be retained in the
2  inmate's central file and a copy given to the inmate.  DOM §§ 52070.18.2, 61020.3.

3      Prior to submission of the validation package to the OCS, the inmate shall be interviewed
4  by the IGI and be given an opportunity to be heard in regard to the source items used.  Cal. Code
5  Regs., tit. 15, § 3378(c)(6)(A).  Before the interview, the inmate must be given written notice at
6  least 24-hours in advance of the interview.  Cal. Code Regs., tit. 15, § 3378(c)(6)(B); see also
7  Frisk Decl. Ex. B ("Castillo settlement") at 4-5.  At the time the inmate is notified, all source
8  items referenced in the validation package shall be disclosed to him.  Cal. Code Regs., tit. 15, §
9  3378(c)(6)(C).  The inmate should be given copies of all non-confidential source items and a
10 Form 1030 to describe all confidential source items.  Id.  The interview must be documented and
11 include a record of the inmate's opinion on each source item used in the verification.  Cal. Code
12 Regs., tit. 15, § 3378(c)(6)(D); see also Castillo settlement at 5.  The information shall be
13 recorded, and a written record of it given to the inmate within 14 calendar days, and, prior to the
14 submission of the validation package to the OCS.  Id.  The documented interview shall also be in
15 the package to the OCS.  Cal. Code Regs., tit. 15 § 3378(c)(6)(E).  Validation or rejection of the
16 evidence relied upon shall be documented on Form 128-B2 (Gang Validation / Rejection
17 Review) and forwarded for placement into the inmate's central file.  Cal. Code Regs., tit. 15, §
18 3378(c)(6)(G).  If the OCS concludes, upon review of the package that the inmate is a gang
19 affiliate, it is documented on Form 128B-2 and returned to the IGI.  DOM § 52070.21.3.  If the
20 validation package is rejected, Form 128B-2 is filled out and returned to the IGI, and directs that
21 any erroneous Forms 812A or 128B identifying inmate as an affiliate be removed from the
22 inmate's file.  DOM § 52070.21.4.  Once the OCS makes its decision, a Classification and Parole
23 Representative shall note in some permanent way on every document or source item used
24 whether it was sufficient to meet validation requirements.  Cal. Code Regs., tit. 15, §
25 3378(c)(6)(G).

26      In 2007, the IGI submitted a validation package to OCS, in which it identified 6 source
27 items supporting revalidation of plaintiff as a prison gang member.  The OCS agreed, and

28

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

4

1    plaintiff was indeed revalidated.

2           In plaintiff's motion to enforce the settlement agreement, plaintiff alleged that his 2007

3    revalidation process breached his 2006 settlement agreement because CDCR did not adhere to its

4    own criteria and procedures regarding the revalidation process, and did not comply with the

5    <u>Castillo</u> settlement.  Plaintiff seeks injunctive, declaratory, and monetary relief.

6                                           **DISCUSSION**

7    A.     <u>Jurisdiction and Standard of Review</u>

8           This court has jurisdiction to enforce the settlement agreement because the court

9    specifically incorporated the terms of the settlement agreement in its order of dismissal.  (Docket

10   No. 230, Ex. B.)  <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381-82 (1994).

11   The underlying settlement agreement explicitly states that it shall be governed by, and construed

12   in accordance with, California laws.  (Docket No. 230, Ex. A ¶ 16.)

13          The elements of a cause of action for breach of contract in California are: "(1) the

14   contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

15   (4) damage to plaintiff therefrom."  <u>Wall Street Network, Ltd. v. New York Times Co.</u>, 164 Cal.

16   App. 4th 1171, 1178 (2008) (internal quotation marks omitted).  It is the plaintiff's burden to

17   prove these elements.  <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821 (2011).

18          The clear and explicit meaning of the contract provisions, interpreted in their ordinary

19   and popular sense, controls judicial interpretation.  Cal. Civ. Code, §§ 1638, 1644; <u>U.S. Bank</u>

20   <u>National Association v. Yashouafar</u>, 232 Cal. App. 4th 639, 646 (2014).  If the language used is

21   clear and explicit, it governs, and the court will not create an ambiguity where none exists.  <u>Id.</u>

22   A contract is not ambiguous merely because the parties disagree on the meaning of a phrase, or

23   because "a word or phrase isolated from its context is susceptible of more than one meaning."

24   <u>State of California v. Continental Ins. Co.</u>, 55 Cal. 4th 186, 195 (2012).  Rather, the "language in

25   a contract must be construed in the context of that instrument as a whole, and in the

26   circumstances of that case, and cannot be found to be ambiguous in the abstract."  <u>Bank of the</u>

27   <u>West v. Superior Court</u>, 2 Cal.4th 1254, 1265 (1992) (italics omitted).

28

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

B.    Analysis

Plaintiff raises several allegations in which he argues that the revalidation process violated the 2006 settlement agreement.[4]  The court addresses each of plaintiff's claims.

1.    The IGI and OCS conducted "underground" reviews of plaintiff[5]

Plaintiff alleges that the IGI and the OCS conducted "underground revalidation reviews" without notice and opportunity to be heard, as required under the Castillo settlement, the California Code of Regulations, and DOM.  (Mot. at 12; Reply at 14-15.)  As stated above, in order to validate a gang affiliate, a validation package must be sent to the OCS.  Cal. Code Regs., tit. 15, § 3378(c)(6).  The California Code of Regulations provides steps the prison must undertake prior to submitting the validation package to the OCS.  Essentially, plaintiff alleges that, in April/May 2007, September 14, 2007, and November 21, 2007, the IGI submitted "secret" or "underground" revalidation packages, or source items, to the OCS for preliminary review to determine whether the source items were sufficient to meet validation criteria.  By doing so, plaintiff alleges that defendants failed to comply with its own regulations.  (Reply at 7-9; Frisk Decl. ¶¶ 11-12.)

However, plaintiff's characterization of these three "underground" reviews as impermissible revalidation packages is not persuasive.  As Judge Ware discussed in his March 27, 2012 order:

> the record indicates that the differential treatment is the extra level of review that was agreed upon in the Bruce v. Ylst settlement agreement and intended to protect plaintiff.  CDCR agreed to ensure that any future re-validation would comply with CDCR criteria for re-validation and due process protections.  [Citation omitted.]  Source items regarding plaintiff were scrutinized and rejected if they were found to be non-compliant.  See, e.g., Doc. #47, Exh. W (prison officials found that March 8, 2007 memorandum, by itself, was insufficient to identify plaintiff as a gang affiliate) and Doc. #48, Exh. HH (OCS confirmed that two source items were valid and showed BGF-related

---

[4]  The court is mindful that the only issues before it concern whether plaintiff's 2007 revalidation violated the 2006 settlement agreement.  The question of whether the 2007 revalidation itself was correct is not before the court.

[5]  This claim is listed as Contention 2 in plaintiff's motion to enforce.  (Mot. at 11.)

activity but declined to submit a validation package until additional source items were discovered and properly documented). Essentially, defendants appeared to have imposed a heightened evidentiary standard upon themselves when re-validating plaintiff. Although plaintiff was not informed every time any gang-related material referencing him was reviewed, this does not create a triable issue of fact as to whether defendants were deliberately trying to re-validate him. And the fact that evidence previously rejected as insufficient was later successfully used in a validation package is not evidence of a retaliatory motive. In fact, it again shows the heightened evidentiary standard applied when evaluating plaintiff's gang status. The March 8, 2007 confidential memorandum was considered insufficient evidence of gang activity when considered by itself, even when supported by inmate correspondence and informant interviews. Doc. #47, Ex. W. Instead, gang investigators did not submit the March 8, 2007 memorandum as part of a re-validation memorandum until a November 2007 interview with an confidential informant provided further information regarding plaintiff's BGF activity, and corroborated other information received by confidential informants. The fact that gang investigators took extra care when preparing a validation memorandum regarding plaintiff does not create a triable issue of fact as to whether his litigation and grievance activity were a but-for cause of his re-validation.

(Docket No. 235, Ex. A at 29 (<u>Bruce v. Cate</u>, No. 09-4649 JW (N.D. Cal. March 27, 2012)).

Plaintiff has not provided any plausible evidence to support his argument that these "underground" reviews violated the terms of the settlement agreement. That is, these informal and preliminary reviews are not prohibited by plaintiff's settlement agreement, the state regulations, or the <u>Castillo</u> settlement.[6] Thus, plaintiff's claim that the "underground reviews" breached his settlement agreement is DENIED.

> 2.   <u>Plaintiff was not provided written notice of the IGI's conclusions</u>

Plaintiff alleges that defendants breached the settlement agreement because the IGI failed to document his conclusions or provide plaintiff written notice of his conclusions as the IGI was

---

[6]  Because the court concludes that the informal and preliminary reviews are not prohibited by plaintiff's settlement agreement, plaintiff's additional claims that the informal reviews breached the settlement agreement by depriving him of "meaningful" due process, and violating California Code of Regulations § 3378(c)(6) are also DENIED. (Mot. at 12, Contentions 3 and 4.) For the same reason, all of plaintiff's claims related to these "underground reviews," including plaintiff's claim that the CDCR failed to uniformly apply its gang validation procedures to plaintiff, in violation of DOM § 52070.6.2 because not every inmate was subject to the "underground review," are DENIED. (Mot. at 14, Contention 14; Reply at 16-17.)

1  required to do under DOM §§ 52070.18.1,[7] 52070.18.2,[8] and California Code of Regulations,

2  title 15, § 3375(h)[9].  (Mot. at 11.)

3         However, to the extent plaintiff is referring to the IGI's "underground" reviews which all

4  occurred prior to submission of the revalidation package to the OCS (Reply at 7-9), the court has

5  already determined that these informal or preliminary reviews are not governed by, nor do they

6  violate, plaintiff's settlement agreement.  In fact, DOM §§ 52070.18.1 and 52070.18.2 refer to

7  documentation that the IGI must provide <u>after</u> a determination that an inmate is a gang affiliate.

8  Plaintiff's claims that defendants violated the settlement agreement because defendants failed to

9  abide by DOM §§ 52070.18.1 and 52070.18.2 after these preliminary or "underground" reviews

10 are rejected because the determination that plaintiff was a gang affiliate had not yet occurred.

11 <u>Cf.</u> DOM § 52070.26 (providing that any information or source items developed which meets

12 validation requirements should be disclosed to the inmate on CDC Form 812 A/B at the inmate's

13

14         [7]  "If, after the thorough investigation and documentation prescribed by DOM, Chapter 6,

15 Article 2, the gang investigator concludes the inmate/parolee is gang affiliated . . . or has had a
   change in gang status, the investigator shall complete either a CDC Form 812-A, Notice of

16 Critical Case Information - Prison Gang Identification, or a CDC Form 812-B, Notice of Critical
   Case Information - Disruptive Group Identification.  On the form, the gang investigator shall

17 document that affiliation, category of involvement, and the original, independent source items of
   information contained in the central file, which were used to support the conclusion.  The

18 completed CDC Form 812-A/B shall be retained in the inmate's/parolee's central file and the
   inmate/parolee shall be given a copy. . . ."

19
          [8]  "The gang investigator shall also document in narrative fashion on a CDC Form 128-B,

20 General Chrono, the inmate's/parolee's gang affiliation, category of involvement, and specify
   each original, independent source item of information contained in the central file, which was

21 relied upon to support the conclusion.  A CDC Form 128-B shall also be used to document
   insufficient evidence to support a conclusion of gang affiliation.  Documentation shall begin with

22 a definite conclusion of finding based upon the evidence.  It shall not be inconclusive or
   equivocal.  The completed CDC Form 128-B shall be retained in the inmate's/parolee's central

23 file and the inmate/parolee shall be given a copy.  The investigator shall also assure the

24 inmate/parolee has received copies of all non-confidential documents used in the validation. . . ."

25
          [9]  Regarding the classification process, "An inmate shall be provided a copy of all

26 nonconfidential staff documentation and reports placed in the inmate's central file unless

27 otherwise requested in writing by the inmate."

28
   Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
   Program
   G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

annual review, but "[t]he information [on a CDC Form 812 A/B] need not be disclosed if it is part of an ongoing investigation.").  In addition, California Code of Regulations, title 15, § 3375(h) refers to the classification process, not the gang revalidation process.

On the other hand, plaintiff alleges that he was not provided Form 812-A or 128-B chronos prior to being interviewed in conjunction with the IGI's validation request and submission of the validation package.  (Reply at 19.)  While defendants state that plaintiff was given notice of all nonconfidential documents in the CDCR 1030 Confidential Information Disclosure Forms, defendants have not explicitly addressed plaintiff's assertion that he was not provided copies of Form 812-A or 128-B chronos, assuming they were non-confidential. See DOM § 52070.21.1.[10]  It is not clear whether the regulations, DOM, or Castillo settlement include discussion of when the IGI or prison is required to provide Form 812-A or 128-B chronos, and specifically, whether disclosure of these documents is part of the gang revalidation procedure.

Thus, this claim will be referred to Judge Vadas for possible settlement.  If the parties are unable to reach a settlement agreement, defendants will be directed to file a supplemental brief addressing this claim, with supporting documentation and citations.  If defendants discover that they failed to properly provide Forms 812-A and 128-B, defendants shall address what remedy is appropriate.

3.   Plaintiff was not permitted to challenge the initial validation source items

Plaintiff alleges that the CDCR's refusal to allow him to challenge initial validation source items relied up on plaintiff's 1998 initial validation, even though plaintiff was told that it was CDCR policy and intent to do so breached the settlement agreement.  (Mot. at 12.)  Plaintiff alleges that the revalidation package included at least three source items, dated in 1995, which

_____

[10]  "The gang investigator shall attach to the completed Q series forms, a copy of the coordinator's CDC Form 128-B memorandum with copies of the supporting documentation. This shall be known as a validation package. . . . The inmate shall be given copies of all non-confidential documents unless otherwise requested in writing by the inmate."

1    were also used in his 1998 initial validation.  (Reply at 10.)  However, plaintiff does not cite to,

2    and court cannot find, any official requirement in the <u>Castillo</u> settlement, the California Code of

3    Regulations, or the DOM mandating that an inmate receive this opportunity during a revalidation

4    process.

5        In addition, Judge Ware's March 27, 2012, order confirms defendants' argument that

6    plaintiff's revalidation is based solely on the six new source items, and not on the initial source

7    items from 1995.  (Docket No. 235, Ex. A at 14, n.3 (<u>Bruce v. Cate</u>, No. 09-4649 JW (N.D. Cal.

8    March 27, 2012)) ("Plaintiff's re-validation is based solely on the later six source items. . . . The

9    reliability of the 1995 source items is not directly relevant to plaintiff's re-validation.").  Because

10   plaintiff's challenged settlement agreement focuses only on any proposed revalidation process,

11   plaintiff's claim that his inability to challenge the validation source items, used in his 1998 initial

12   validation proceedings, breached the settlement agreement is DENIED.

13       4.    <u>CDCR did not disclose the "articulable basis" of each validation source item</u>

14       Plaintiff alleges that defendants failed to disclose the "articulable basis" of each

15   validation source item as required by the <u>Castillo</u> settlement.  (Mot. at 12.)  For example,

16   plaintiff was only provided a copy of the RVR dated September 6, 2007, but never the reasons

17   why the RVR was being considered as a source item before the IGI interview.  (Frisk Decl., Ex.

18   E at 2 ("source item 5a")).  The <u>Castillo</u> settlement defines "articulable basis" as "a written

19   record of specific, articulable facts along with the rational inferences drawn from those facts."

20   (Frisk Decl., Ex. B at 3.)  The <u>Castillo</u> settlement goes on to require an articulable basis for

21   several types of source items.  (<u>Id.</u> at 5-7.)

22       As an initial matter, it is not immediately clear whether each of the six source items used

23   to support revalidation of plaintiff are each "independent source items."  The validation

24   memorandum lists six "new" source items, however, the items are labelled 4, 4a, 4b, 5, 5a, and

25   5b.  (Frisk Decl., Ex. E at 1-3.)  For 4a, 4b, 5a, and 5b, those source items indicate that they are

26   "support document[s]," which leads this court to surmise that they are not considered

27   "independent source items" as used in California Code of Regulations, title 15 § 3378(c)(8).

28

1   (<u>Id.</u>)  In addition, the <u>Castillo</u> settlement states that a single, gang related conduct described or

2   documented by multiple sources shall constitute one source item.  (<u>Id.</u>, Ex. B at 7.)  Thus, the

3   court is inclined to agree with plaintiff that the six "new" source items are made up of 2

4   independent or principal source items, which each include 2 supporting source items.  (Mot. at

5   9.)

6          Nonetheless, the six source items used to revalidate plaintiff relied upon confidential

7   informants, written communication, association, direct link, and offenses.  (<u>Id.</u>, Ex. E at 1-3.)  In

8   the <u>Castillo</u> settlement, the agreement specified that if the prison used communications as a

9   source item, staff "must articulate and record why a written material or communication is

10  evidence of gang association/membership based on the . . . communication."  (Frisk Decl., Ex. B

11  at 6.)  Similarly, if staff use a disciplinary offense as a source item, staff "shall have an

12  articulable basis for why the offense is gang-related. . . [and] shall record this information and

13  provide it on a written form given to the inmate."  (<u>Id.</u>)

14         Plaintiff does not set forth any specific argument as to why the written communication

15  source items lack an articulable basis.  In addition, the court has reviewed the offense source

16  item – i.e., the RVR – as a supporting document to the independent source item.  Specifically, an

17  RVR dated September 5, 2006, found plaintiff and his cellmate, Stanley Williams, aka "Lil

18  Tookie," a validated active Black Guerilla Family ("BGF") gang member, in possession of two

19  stabbing weapons in their cell.  (Frisk Decl., Ex. E at 2.)  This information corroborated the

20  principal source item – a confidential memorandum, dated November 21, 2007 – indicating that

21  a confidential inmate identified plaintiff as an active BGF gang member, who possessed two

22  weapons, and worked in concert with Williams and Frank Allen, aka "Wiggles," who was also a

23  validated BGF associate, and was trying to unify BGF gang members.  (<u>Id.</u>)  Taken together, the

24  court finds that the offense supporting source item appears to set forth a sufficient articulable

25  basis for why the offense is gang-related.

26         Plaintiff's argument that the confidential source items do not contain "specific articulable

27  facts" and "rational inferences" is not persuasive.  The <u>Castillo</u> settlement does not require an

28

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

"articulable basis" for confidential sources.  (Frisk Decl., Ex. B at 7.)  Accordingly, plaintiff's claim that defendants failed to disclose the "articulable basis" of each validation source item is DENIED.

5. <u>CDCR relied on source items containing knowingly false and misleading information and violated CDCR validation criteria</u>

Plaintiff argues that none of the source items identified which "source item criteria" the information was supposed to meet, pursuant to Section 3378(c)(8).  (Reply at 20.)  Plaintiff claims that he repeatedly requested specific facts to be disclosed regarding underlying letters referenced in two Confidential Information Disclosure forms, but defendants refused.  (<u>Id.</u>)

Plaintiff appears to be arguing that the prison was required to disclose to plaintiff the "articulable basis" of why each source item met the validation source item criteria.  (<u>Id.</u>) However, as stated previously, in the <u>Castillo</u> settlement, the term "articulable basis" does not apply to each source item criteria.  For example, when the independent source item originates from a confidential source, the <u>Castillo</u> settlement agreement does not specify that the staff must have an articulable basis from which to determine that information from the confidential source is gang-related.  (Frisk Decl., Ex. B ¶ 21.)  It states that the confidential source must identify specific gang activity or conduct, but does not require an articulable basis as plaintiff suggests. (<u>Id.</u>)

Plaintiff further alleges that defendants breached the settlement agreement because the prison relied upon source items that did not comply with the validation criteria.  Plaintiff summarizes that the prison need only have one reliable source item showing plaintiff's involvement in gang activity over the past six years in order to revalidate plaintiff as a gang member.  (Reply at 26.)  The source items must meet one of the reliability criteria in Section 3378(c)(8)(A) - (M).  (<u>Id.</u>)

Plaintiff argues that 5 of 6 source items used were previously rejected as not meeting validation requirements.  (Reply at 27.)  As such, OCS should have indicated that "This document does not meet validation requirements."  (<u>Id.</u>) (citing DOM § 52070.21.5.)  However,

1   such indication must occur only after a validation package has been submitted to OCS, and a

2   decision has been made.  See DOM § 52070.21.5.  Plaintiff argues that the "underground

3   reviews" of several source items should have prompted a similar marking to demonstrate that

4   those source items were unofficially rejected as insufficient.  However, as the court indicated

5   previously, there is no evidence to persuade the court that those "underground reviews" are

6   subject to the California Code of Regulations or the DOM.  In addition, the "underground

7   reviews" of source items that rejected the items as insufficient did so on the basis that the source

8   items were insufficient by themselves, but not necessarily insufficient when combined with other

9   supporting source items.

10          Plaintiff claims that the six source items used to revalidate him do not meet evidentiary

11   criteria under the California Code of Regulations or the Castillo settlement.  Defendants do not

12   expressly address plaintiff's arguments.  The court is mindful that plaintiff may be properly

13   revalidated based on one reliable source item.  However, as previously noted, it is not clear

14   whether the supporting source items can or should be counted as one source item, and whether

15   the "one reliable source item" must be an "independent source item."  Thus, this claim will be

16   referred to Judge Vadas for possible settlement.  If the parties are unable to reach a settlement

17   agreement, defendants will be directed to file a supplemental brief addressing this claim, with

18   supporting documentation and citations.  If defendants discover that none of the source items

19   complied with the California Code of Regulations or the Castillo agreement sufficient to

20   revalidate plaintiff, defendants shall also address what remedy is appropriate.

21          6.     CDCR violated the informant interview

22          It is not clear what plaintiff's argument is regarding this claim.  (Mot. at 12.)  Because it

23   is plaintiff's burden to prove the elements of a breach of contract claim, and he has not done so,

24   this claim is DENIED.

25          7.     IGI failed to document plaintiff's verbal opinions and failed to disclose the

26                 December 20, 2007 validation memorandum before submission to the OCS

27          Plaintiff alleges that at his interview on December 19, 2007, the IGI failed to document

28

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

1   the verbal opinions plaintiff provided in rebuttal to each source item relied upon.  (Reply at 21-
2   22.)  In addition, plaintiff claims that the IGI failed to provide plaintiff copies of his documented
3   rebuttal and failed to disclose the December 20, 2007 validation memorandum before submitting
4   it to the OCS.  (Id., Mot. at 10.)  Instead, plaintiff was given a copy of the memorandum on
5   December 26, 2007.

6          The Castillo settlement  provides that, for inactive reviews, the prisoner shall be given 24
7   hours notice in advance of the review.  (Frisk Decl., Ex. B ¶ 10.)  In addition, the prisoner will be
8   given an opportunity to record his opinions on the new source items used.  (Id.)  A written copy
9   of these opinions shall be given to the prisoner within 14 calendar days of the inactive review.
10  (Id.)  When a new source item is used beyond that used in the initial validation, each inmate shall
11  be given notice and an opportunity to be heard during the inactive review.  (Id.)  This complies
12  with the DOM, which provides that the interview shall "be documented and include a record of
13  the inmate's opinion on each of the source items used in the validation."  DOM § 52070.21.1.
14  "Staff shall record this information and provide a written record to the inmate within fourteen
15  (14) calendar days and prior to submission of the validation package to the OCS."  Id.; Cal. Code
16  Regs., tit. 15 § 3378(c)(6)(D).[11]

17         Plaintiff claims that the submission of his opinions on each of the source items was not
18  complete, and some of plaintiff's statements were misrepresented.  (Reply at 22; Docket No. 254
19  ¶ 10.)  In addition, the parties do not dispute that plaintiff was not provided copy of the
20  validation memorandum, which included the recorded opinions, until December 26, 2007.

21         The court concludes that the failure to comply with the DOM and California Code of
22  Regulations regarding the late disclosure to plaintiff appears to be inconsistent with plaintiff's
23  settlement agreement, see Cal. Code Regs., tit. 15 § 3378(c)(6)(D).  Plaintiff requests declaratory

24

25

26         [11]  "The interview shall be documented and include a record of the inmate's opinion on
27  each of the source items used in the validation.  Staff shall record this information and provide a
    written record to the inmate within fourteen (14) calendar days *and prior to submission of the*
    *validation package* to OCS."  (Emphasis added.)

28

1   and injunctive relief, as well as damages.  For the reasons stated in defendants' pleadings, the

2   court agrees that injunctive relief is indeed moot, in light of plaintiff's subsequent 2013

3   revalidation proceedings.  This claim will be referred to Judge Vadas for possible settlement.  If

4   the parties are unable to reach a settlement agreement, defendants will be directed to file a

5   supplemental brief addressing the extent of the breach, if any, and what remedy is appropriate.

6       8.      CDCR failed to allow plaintiff to be interviewed by the IGI or designee

7           Plaintiff claims that defendants violated the settlement agreement because plaintiff did

8   not present his opinions, nor was he interviewed, by the "IGI or a designee qualified to act as an

9   investigative lieutenant with the appropriate training, rank, and certification."  (Mot. at 13.)

10  Plaintiff states that the interviewer instead was a correctional officer, and CDCR policy does not

11  permit a correctional officer to be an acting lieutenant.  (Id., n.3.)  Further, plaintiff cites to DOM

12  § 52070.14 to assert that only lieutenants are authorized to be an IGI.  (Id.)

13          Plaintiff has not cited to, and the court cannot find, that the interviewer must be an IGI.

14  The record shows that Assistant IGI T. Turmezei drafted and submitted validation package, and

15  Assistant IGI Eubanks helped Assistant IGI T. Turmezei interview plaintiff.  (Frisk Decl., Ex.

16  E.)  Further, DOM § 52070.21.1 states that prior to the submission of a validation package, the

17  inmate shall be "interviewed by the IGI *or designee*, and given an opportunity to be heard."

18  DOM § 52070.21.1 (emphasis added); see Cal. Code Regs., tit. 15, § 3378(c)(6)(A).[12]  Despite

19  plaintiff's assertion, there is no indication that a designee must be "qualified to act as an

20  investigative lieutenant with the appropriate training, rank, and certification."  Thus, plaintiff's

21  claim that this failure breached the settlement agreement is DENIED.

22      9.      CDCR failed to conduct an additional thorough review

23          Plaintiff asserts that the settlement agreement required an additional thorough review to be

24

25  ───────────────

26  [12]  "Prior to submission of a validation package to the OCS, or during the inactive status review process, the subject of the investigation shall be interviewed by the Institution Gang

27  Investigator, or designee, and given an opportunity to be heard in regard to the source items used in the validation or inactive status review."

28  Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

1  conducted of any proposed validation to ensure that the revalidation complied with proper criteria

2  and procedural protections.  (Mot. at 13-14.)  He construes this portion of the settlement

3  agreement to mean that defendants were required to conduct an additional, more detailed, and

4  complete written review of any proposed revalidation, and that such review must occur after the

5  revalidation package is submitted to the OCS.  (Reply at 39-40.)  Plaintiff intimates that

6  defendants were required to set up "formal" procedures to implement the agreement.  (Id. at 40.)

7        Under California law, when interpreting contracts, the written agreement is the "first and

8  highest" evidence of the mutual intent of the parties.  Pope v. Allen, 225 Cal. App. 2d 358, 364

9  (1964).  If possible, the court will determine the parties' intention solely from the language of the

10  letter agreement itself.  See Ben-Zvi v. Edmar Co., 40 Cal. App. 4th 468, 472-73 (1995).  In

11  addition, courts will not "create for the parties a contract which they did not make, and . . . cannot

12  insert in the contract language which one of the parties now wishes were there."  Levi Strauss &

13  Co. v. Aetna Casualty & Surety Co., 184 Cal. App. 3d 1479, 1486 (1986).  The court will,

14  however, allow extrinsic evidence tending to prove a meaning to which the agreement's language

15  reasonably is susceptible, but only if the offered evidence is relevant to prove a reasonable

16  interpretation in light of the facts, circumstances, and conditions surrounding the execution of the

17  agreement.  See Oakland-Alameda County Coliseum v. Oakland Raiders, Ltd., 197 Cal. App. 3d

18  1049, 1057-58 (1988).

19        Here, plaintiff's interpretation that the "thorough[] review" of source items considered

20  requires an "additional" post-validation review and a written record of the review is not supported

21  by the plain language of the agreement.  Thus, plaintiff's claim that this failure breached the

22  settlement agreement is DENIED.

23        10.   CDCR failed to disclose source items at annual classification reviews

24        Plaintiff alleges that the CDCR failed to disclose source items at his annual classification

25  reviews, as required by DOM § 52070.26.[13]  (Mot. at 14.)  Defendants assert that the Institutional

27  _____

[13]  "At the inmate/parolee's annual review, any information or source items received/developed during the preceding year, which meets the validation requirements as

28  Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

1    Classification Committee is not required to make a separate disclosure of source items for a

2    revalidation. (Frisk Decl. ¶ 19.)  Rather, this is only completed at the initial validation stage.

3    (Id.)

4        Defendants do not address plaintiff's claim or citation to DOM § 52070.26.  Plaintiff does

5    not explain his claim or clearly provide examples of his allegation.  In addition, it is not at all

6    clear that the DOM section to which plaintiff cites is considered part of the revalidation process

7    so that compliance with DOM § 52070.26 is mandated by the settlement agreement.  That is, it is

8    not apparent to the court why the failure of the prison to disclose source items at a classification

9    review to an inmate after he has already been revalidated is relevant to whether plaintiff's

10   proposed revalidation complied with CDCR criteria for revalidation and due process protections.

11       As the claim currently reads, the court is not inclined to find that defendants breached the

12   settlement agreement based on the CDCR's failure to disclose source items at plaintiff's annual

13   classification review.  Because it is plaintiff's burden to prove the elements of a breach of

14   contract claim, and he has failed to do so, this claim is DENIED.

15       11.   <u>CDCR relied upon undisclosed evidence to establish inactive eligibility date</u>

16       Plaintiff alleges that after the OCS revalidated him on January 16, 2008, the CDC Form

17   128B-2 was signed and dated the same day.  (Frisk Decl., Ex. G.)  On that form, it calculated

18   plaintiff's next active/inactive review eligibility date as August 14, 2013.  (Id.)  Plaintiff argues

19   that an inmate's inactive eligibility date is set six years from the date of the gang affiliate's last

20   date of activity.  (Reply at 21.)  Plaintiff claims that the IGI never stated, and there is no evidence

21   to show, that plaintiff's revalidation relied upon any gang-related activity dated August 14, 2007.

22   (Id.)  In fact, argues plaintiff, the revalidation disclosure report states that the source items noted

23   the latest gang-related activity in February 2007.  (Id.)  Thus, argues plaintiff, his review

24   

25   defined in CCR Section 3378, shall be disclosed to the inmate/parolee on the CDC Form 812
     A/B.  The information need not be disclosed if it is part of an ongoing investigation or if
26   disclosure would compromise an ongoing investigation.  The inmate/parolee shall be interviewed
     regarding the information and a request shall be made to the OCS for an updated CDC Form
27   128B-2."

28   Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
     Program
     G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

1    eligibility date should have been in February 2013, and not August 2013.  Plaintiff alleges that

2    because August 2013 was set as the eligibility date, that necessarily means that the prison must

3    have relied upon August 2007 gang-related activity and information but failed to disclose that

4    information to plaintiff, which was a breach of the settlement agreement to be provided notice and

5    an opportunity to be heard.

6            To support plaintiff's assertion that an inmate's eligibility review is set six years from the

7    last date of gang activity, plaintiff cites to California Code of Regulations, title 15, § 3378(e).

8    However, Section 3378(e) states, "An inmate housed in a security housing unit (SHU) as a gang

9    member or associate may be considered for review of inactive status by the Department Review

10   Board when the inmate has not been identified as having been involved in gang activity *for a*

11   *minimum of six (6) years*."  (Emphasis added.)  It does not state that the eligibility review date is

12   determined by calculating exactly six years from the last identified date of gang-related activity.

13   Nor can the court find any provision supporting that proposition.  More importantly, even

14   assuming that plaintiff's eligibility review date was set six years from some undisclosed gang-

15   related activity, that is not relevant to the issue at hand, which is whether defendants breached the

16   settlement agreement to thoroughly review all source items used in consideration of plaintiff's

17   revalidation to ensure the proposed revalidation complies with relevant laws.

18           Plaintiff provides a copy of an August 11, 2009 Classification Committee review form

19   stating that the Committee reviewed plaintiff for inactive gang status and noted that "[t]he last

20   source document used in the validation process is dated 12/10/07, indicating recent (within 6

21   years) gang activity that occurred in August 2007."  (Pl. 2d Decl., Ex. 22.)  Plaintiff asserts that

22   this document shows that his inactive review eligibility date of August 14, 2013, is based on an

23   undisclosed gang activity allegation that must have been used to revalidate him.  (Reply at 21.)

24   However, a review of the December 10, 2007 source document used in the revalidation process,

25   and referenced by the August 11, 2009 Committee form, shows that there was no reference to any

26   gang activity in August 2007.  (Frisk Decl., Ex. F at 5.)  The source document actually references

27   the gang activity as occurring on March 29, 2006.  (Id.)  In short, there is no persuasive evidence

28

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement
Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd

to support plaintiff's assertion that he was in fact revalidated based on a source item that accused plaintiff of gang-related activity in August 2007.

Thus, plaintiff's claim that this breached the settlement agreement is DENIED.

**CONCLUSION**

1.      Plaintiff's motion to enforce the settlement agreement is DENIED in part. Specifically, the motion with respect to Claims 1, 3, 4, 6, and 8-11 are DENIED.

2.      The remaining claims are REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claim in this action, as described above.  The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

If these settlement proceedings to do not resolve this matter, the parties will be directed to file supplemental briefing specifically addressing the merits of the surviving claims as discussed above, as well as what remedies are appropriate.

3.      The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka, California.

4.      The instant case is STAYED pending the settlement conference proceedings.

IT IS SO ORDERED.

DATED: September 30, 2016

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge

Order Denying in Part Motion to Enforce Settlement Agreement; Referring Case to Pro Se Prisoner Settlement Program
G:\RMWALL\_psp\1999\1999_04492_Bruce_et_al_v_Ylst_et_al_(PSP)\Bruce492postosc2.wpd